COUNTY OF DALLAS,
Texas, Appellant,

v.

Linda L. WILAND, as Administrator for the Estate of Stanley Gaines; Jim Gilliand; and Sonia Avina, Appellees.

No. 05–03–00077–CV.

Court of Appeals of Texas,
Dallas.

Dec. 30, 2003.

Rehearing Overruled Feb. 5, 2004.

Marc H. Richman and Jon A. Haslett, Law Office of Marc H. Richman, Dallas for Appellant.

Steven K. DeWolf, Bellinger & DeWolf, L.L.P., Todd R. Hixon, Dallas, David B. Sloane, Fort Worth, for Appellees.

Before Justices WHITTINGTON, O'NEILL, and LANG.

## OPINION

Opinion By Justice LANG.

Appellees Linda Wiland, as administrator for the estate of Stanley Gaines, Jim Gilliand, and Sonia Avina (Deputies) brought this action pursuant to 42 U.S.C.

§ 1983 against appellant County of Dallas, Texas (County). The Deputies claim procedural and substantive due process violations arising out of their termination as deputy constables for the County. Raising twenty-one issues, the County appeals the partial summary judgment rendered in favor of the Deputies as to the County's liability and denial of summary judgment for the County. The County also contends the trial court erred in denying the County's motion for new trial, and abused its discretion in entering judgment on the jury's damages award and awarding attorneys' fees to the Deputies. For the reasons below, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2000, Dallas County constable-elect, Mike Dupree, sent letters to deputy constables Stanley Gaines, James Gilliand, and Sonia Avina, stating that their services would not be needed under Dupree's administration. The Deputies timely filed formal grievances with the County. However, the County did not respond to the Deputies' grievances, telling the Deputies they were ineligible to participate in the grievance process. The County supported this position stating that deputy constables' right to serve expired when the current constable's term ended. This reasoning also supported the County's contention that it did not terminate the Deputies, but that the Deputies were merely not rehired, as Constable Dupree was not required to swear in the Deputies whose terms had expired. On January 1, 2001, the Deputies attended the swearing-in ceremony, but Constable Dupree refused to swear them in as deputy constables. On January 8, 2001, the County advised the Deputies that it would take no action on their grievances. The Dallas County Civil Service Commission held a hearing on February 27, 2001 to determine whether the Deputies were eligible to participate in the civil service grievance process. It concluded that because failure to be sworn in was not a dismissal, the Deputies' claims were not "grievable."

The Deputies filed this suit on June 11, 2001, and filed an amended motion for partial summary judgment on liability. The County filed a cross-motion for summary judgment on all the Deputies' claims. The court master issued a recommendation granting the Deputies' motion on liability on both procedural and due process grounds, and denying the County's motion.

The County appealed both rulings to the trial court, and the trial court adopted the master's recommendation granting the Deputies' summary judgment and concluding the County was liable for violating the Deputies' procedural and due process rights under section 1983. After a trial on damages, the jury awarded the Deputies a total of $1,532,065. The trial court conducted a bench trial on the issue of attorneys' fees. On November 8, 2002, the trial court signed a final judgment ordering that the Deputies recover $1,532,065 plus, pre-judgment interest and attorneys' fees.

The County next filed a combined motion for new trial or, alternatively, motion for judgment notwithstanding the verdict (JNOV) or remittitur. On January 17, 2003, the court denied the County's motion. This appeal followed.

## SUMMARY JUDGMENT AS TO THE COUNTY'S LIABILITY

In multiple issues, the County contends the trial court erred in granting the Deputies' motion for summary judgment in which the trial court held that: (1) it was undisputed the Deputies were entitled to civil service protection, (2) the County's refusal to swear in the Deputies was

equivalent to dismissal, (3) the Deputies were entitled to substantive and procedural due process protections, and (4) the County denied the Deputies these due process protections. The County claims: (1) it lacked the authority, through its County Commissioners' Court, to extend civil service protection and a property interest in employment to deputy constables;[1] (2) the Deputies had no property interest in their jobs, and that to find such an interest would violate public policy;[2] (3) the Deputies' right to serve expired at the end of the elected constable's term;[3] and (4) the Deputies were not entitled to due process rights, or if they were, the County provided any process due.[4] We consider these issues together in the following analysis.

## A. Standard of Review

The standards for reviewing a traditional summary judgment are well-established. *See Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). A party moving for traditional summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil &*

*Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in favor of the nonmovant. *Willrich*, 28 S.W.3d at 23–24.

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.*

## B. Applicable Law: Section 1983 Procedural Due Process

■■■ To state a claim under section 1983, a plaintiff must allege facts showing that (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) the deprivation was caused by a person or persons acting under color of state law. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir.1999) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). Liberty and property interests are rights protected by the Fourteenth Amendment against invasion by the state. U.S. Const. amend. XIV, § 1. Thus, a plaintiff alleging a section 1983 violation under the Fourteenth Amendment must show that state action deprived him of a protected right without due process. *See Bass*, 180 F.3d at 241.[5]

---

1. County's issues four, five, and six.

2. County's issues seven, eight, nine, sixteen, seventeen, and eighteen.

3. County's issues one, two, and three.

4. County's issues thirteen, fourteen, and fifteen.

5. Where state action causes the deprivation, actors are necessarily acting "under the color of law." *Bass*, 180 F.3d at 241 (citing *Lugar*

■ In analyzing the Deputies' procedural due process claim, we apply a two-part test: (1) we must determine whether the Deputies had a liberty or property interest entitled to procedural due process; and (2) if so, we must determine what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995); *see Findeisen v. N.E. Indep. Sch. Dist.,* 749 F.2d 234, 237 (5th Cir.1984).

## C. Application of Law to Facts

### 1. The Deputies' Property Interest in Their Employment

■ A constitutionally protected property interest is defined as an "individual entitlement grounded in state law, which cannot be removed except 'for cause'." *Grounds v. Tolar Indep. Sch. Dist.,* 856 S.W.2d 417, 418 (Tex.1993) (quoting *Logan,* 455 U.S. at 430, 102 S.Ct. 1148). Therefore, our determination as to whether the Deputies had a property interest in their employment turns on whether a statutory basis exists for such a right. Instructive to our analysis is *Ingram v. Dallas County, Texas,* which also decided whether an employee had a property interest in her employment under the Dallas County civil service system. 688 F.Supp. 1146, 1155 (N.D.Tex.1988) (holding Category "C" employee has property interest in job). Here, as in *Ingram,* "[a]n understanding of the civil service scheme applicable to Dallas County employees derives partly from the County's Civil Service Rules and partly from Texas law, specifically, TEX. LOC. GOV'T CODE ANN. §§ 158.001–.015." *Id.* at 1150. Because the property interest at issue must be grounded in this statute, we briefly discuss the development of chapter 158 pertinent to this case.

■ Whether deputy constables were included in the Dallas County civil service system is an issue that occupied both the judiciary and the Legislature in the late 1980s. In *Arrington v. County of Dallas,* a case tried in 1988, this Court established that a deputy constable's tenure was coextensive with the elected constable's tenure, thus excluding deputy constables from protection under the Dallas County civil service system. 792 S.W.2d 468 (Tex.App.-Dallas 1990, writ denied). However, in 1989 the Legislature acted to address this precise issue and the occurrence of what Representative Steven Wolens described as "political firings." *See Hearings on S.B. 1006 Before the House County Affairs Comm.,* 71st Leg., R.S. (May 9, 1989) (statement of Rep. Wolens).[6] Accordingly, the Legislature amended chapter 158 of the Texas Local Government Code for the purpose of allowing counties to extend civil service protection to deputy constables. *Id.; Hearings on S.B. 1006 Before the Senate Intergovernmental Relations Comm.,* 71st Leg., R.S. (Apr. 4, 1989) (statement of Sen. Eddie Bernice Johnson).[7]

As amended, chapter 158 delegates statutory authority to county commissions to adopt and enforce rules regarding, among other things, the definition of a county employee, layoffs and dismissals, grievance procedures, and other matters relating to employees' procedural and substantive rights. TEX. LOC. GOV'T CODE ANN. § 158.009(a)(1), (5), (7), (8) (Vernon 1999). As a result of the 1989 amendment, it also allows counties with populations of 200,000

---

*v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

**6.** Op. Tex. Att'y Gen. No. DM 016 (1997).

**7.** *Id.*

or more to extend the county civil service system to positions like deputy constable. *See id.* § 158.002.

In 1990, Dallas County elected to act on the amendment. As authorized by chapter 158, the Dallas County Commissioners' Court adopted a rule defining deputy constables as Category "C" employees covered under the Dallas County civil service system. Comm'rs Court of Dallas, Court Order No. 1567 (Sept. 18, 1990); *see* DALLAS COUNTY ADMIN. POLICIES & PROCEDURES MANUAL §§ A 1.03, 2.00–2.01 (Aug.2000) (hereinafter POLICY MANUAL). As directed by Court Order No. 1567, the Policy Manual defines the term "employee" for purposes of designating which county workers are covered by the County's civil service system. According to section A 2.01,

> Employee means a person who obtains a position by appointment and who is not authorized by statute to perform governmental functions involving an exercise of discretion in the person's own right, unless the person is included by a local civil service rule under Section A 1.03 of the Dallas County Administrative Policies. *The term includes Deputy Constables.*

*Id.* § A 2.01 (emphasis added).

The plain meaning of this language brings deputy constables within the protection of the County's civil service system. As such, deputy constables are subject to the dismissal procedures set out in the Policy Manual. *Id.* §§ A 4.21 et. seq. These procedures provide that employees may be dismissed "for just cause," and identify "cause" as:

(A) incompetence;

(B) offensive conduct;

(C) insubordination;

(D) conviction of a felony;

(E) conviction of a misdemeanor involving moral turpitude;

(F) failure to report to work without reporting the reason for absence to his immediate supervisor within 24 hours of his normal working shift;

(G) gross or repeated neglect of duty; or

(H) other conduct inconsistent with the interest of the County.

*Id.* § A 4.21. The County argues the list is not exhaustive and it retains some discretion to determine what constitutes "other conduct inconsistent with the interest of the County" as discussed in section A 4.21(H). However, the fact that Dallas County retains some discretion does not preclude the existence of a property interest. *See Grounds,* 856 S.W.2d at 419. Moreover, the list includes virtually every conceivable reason for dismissal except termination without cause. By omission, termination without cause is unavailable. *See Ingram,* 688 F.Supp. at 1151. This limitation is the essence of civil service protection, and the source of the Deputies' property interest in their employment.[8]

The County argues that the "for cause" requirement in section A 4.21 refers only to dismissal without prior notice. In order to analyze this claim, we must interpret the language of the Policy Manual. *See Curbo v. State, Office of the Governor,* 998 S.W.2d 337, 342–43 (Tex.App.-Austin 1999, no pet.). The Austin court of appeals, when interpreting the grievance procedures of the Office of the Governor, concluded: "our primary goal is to give effect to the written expression of the parties' intent. We must read the procedure in its entirety, striving to give meaning to every

---

**8.** "The hallmark of property … is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Fin-* *deisen,* 749 F.2d at 237 (quoting *Logan,* 455 U.S. at 430, 102 S.Ct. 1148.)

sentence, clause, and word to avoid rendering any portion inoperative." *Id.* at 343 (citations omitted).

We find that the term "notice" appears both in section A 4.21 and again in section A 4.22. Section 4.22 refers to the "notice" that employees shall receive upon termination. The clear import of the term "notice" in section 4.22 is that the "notice" which the employee receives must actually *state the cause* for termination. POLICY MANUAL § A 4.22.[9] In context then, the section A 4.21 language, "without prior notice," means the County may dismiss employees based upon a cause listed in that section, without notifying the employee of such reason for termination *prior* to the dismissal. This provision does not permit the County to terminate an employee without just cause simply by giving advance notice of a "no cause" termination. It is clear that the "notice" of the cause is, in fact, required to be communicated, but "at the time of termination or the earliest possible time" thereafter. To find otherwise would defeat the purpose of the Dallas County civil service system and its dismissal procedures.

Nonetheless, the County contends the Deputies lack a property interest, arguing that the terms set out on the inside cover of the Policy Manual make it clear that not only deputy constables, but *all* civil service employees are at-will employees. These terms provide, "[n]othing in the [Policy Manual] is to be construed as a contract of employment or a provision guaranteeing the specific term or tenure of employment," and that "changes in the employ-

ment conditions may be unilaterally implemented by Dallas County Commissioners' Court." POLICY MANUAL, p. 2.

The Deputies do not argue, and we do not conclude, that the Policy Manual created a contract of employment. However, the definition of "employee," adopted according to Court Order No. 1567 extends the civil service property interest to deputy constables. Even a property interest does not guarantee a specific term or tenure of employment, as a civil service employee is always subject to "for cause" dismissal. Likewise, the potential for the Dallas County Commissioners' Court to unilaterally change the civil service rules does not affect the Deputies' property interest. At oral argument the County conceded that it did not change the terms affecting civil service employees' property interests at any time during the Deputies' employment and termination. The mere possibility that such civil service rules may change does not render existing civil service protections meaningless. *See Ingram*, 688 F.Supp. at 1152–53 (Dallas County Category "C" employee had property interest despite county's ability to unilaterally change civil service rules, where there was no evidence county had done so).

Finally, in light of chapter 158 and the subsequent actions by the County to expressly include deputy constables under the civil service protection, the language of the manual cannot be read to exclude the Deputies from property interests granted under the County's civil service system.[10] The Policy Manual provisions must be con-

---

**9.** Section A 4.21 reads, "An employee may be dismissed from the County without prior notice for just cause including, but not limited to [causes listed]." POLICY MANUAL § A 4.21. Section A 4.22 reads in part, "The employee shall be furnished a written notice of termination at the time of termination or the earliest possible time after the date of dismissal.

Such notice shall specify the cause for termination...." *Id.* § A 4.22.

**10.** *C.f. Stough v. Gallagher,* 967 F.2d 1523, 1530 (11th Cir.1992) (holding no property interest existed because internal personnel policy is "not the equivalent of a statutory civil service system.")

strued in accordance with the Commissioners' Court Orders and may not grant the County rights inconsistent with those orders. *See Henderson v. Sotelo,* 761 F.2d 1093, 1096, 1099 (5th Cir.1985) (where Legislature has granted authority to determine employment policies to another body, court must look to pronouncements of that body); *see also Cole v. City of Houston,* 442 S.W.2d 445, 450 (Tex.Civ. App.-Houston [14th Dist.] 1969, no writ). Accepting the County's argument would lead to a conclusion that *all* county employees are at-will and unprotected by the civil service system. We decline to reach such a result, especially in light of the holding in *Ingram.*

2. *Violation of Procedural Due Process*

Having determined the Deputies had a property interest in their employment, the next step is to determine the process due the Deputies. The Dallas County civil service system provides a grievance process by which employees may appeal adverse employment decisions. Upon receipt of an employee's formal grievance, the supervisor is to thoroughly investigate the grievance and make a written determination. At the employee's request, the County must hold an informal hearing to allow the employee to call witnesses and provide evidence, as well as cross-examine the County's witnesses. If dissatisfied with the administrator's determination of the hearing proceedings, an employee may appeal up the chain of command to the Civil Service Commission. POLICY MANUAL § A 12.00 et. seq. This is the process which the County determined is due.

■ In the instant case, the record reflects that the Deputies timely filed their formal grievances and requested hearings. The Dallas County Civil Service Commission held a hearing to determine whether the Deputies were eligible to participate in the grievance process and concluded the Deputies' claims were not "grievable." This hearing did not provide the Deputies an opportunity to hear the County's explanation for the termination or for the Deputies to present their own evidence. The County failed to follow its prescribed procedures to provide the required written determinations or grievance hearings. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Yet, it is the County's position that this process is not due the Deputies since their tenure "expired." The County contends that if the Deputies had any property rights in their jobs, such rights would have expired upon the end of the prior constable's term, and therefore the Deputies were ineligible to participate in the civil service grievance process. Further, the County posits that its refusal to "re-swear in" the Deputies was not a dismissal because the Deputies had no employment from which to be dismissed. Thus, for the Deputies to prevail in their procedural due process claim, we must not only find that the employment they had was a property right, but that it existed at the time they were terminated or, as the County puts it, not rehired.

Regardless of the County's characterization of its refusal to re-swear the Deputies, the record shows that the County prevented the Deputies from continuing performance of their job duties. The County required the Deputies to hand over their guns, badges, and all other vestiges of employment with the County. The trial court's finding that the County's refusal to swear in the Deputies was tantamount to dismissal reflects both Fifth Circuit law and common sense. Likewise, we see no distinction between termination and failure to "re-swear in" or rehire. Under the law, the Deputies were terminated. *See Battin v. Samaniego,* 23 S.W.3d 183, 189 n. 29

(Tex.App.-El Paso 2000, pet. denied) (citing *Brady v. Fort Bend County*, 145 F.3d 691, 703 (5th Cir.1998) ("that the deputies were terminated by a 'failure to rehire' rather than a 'dismissal' is irrelevant to the question of whether they were impermissibly terminated"); *Warnock v. Pecos County*, 116 F.3d 776, 779 n. 1 (5th Cir. 1997) ("[f]or our purposes, there is no difference between firing and declining to reappoint.")); *see also McBee v. Jim Hogg County*, 730 F.2d 1009, 1015 (5th Cir.1984) (en banc) (same). Moreover, although it could have done so at any time, the Dallas County Commissioners' Court placed no limits, such as term limits, on the deputy constable's civil service treatment. We conclude the Deputies' property interests in their jobs existed at the time the County terminated them.

For the reasons set out above, we conclude the Deputies established their procedural due process claim and the County raised no genuine issue of material fact. We conclude the trial court properly granted summary judgment for the Deputies and denied the County's cross-motion. We resolve the County's issues 1–9 and 13–18 against it.

## D. Substantive Due Process

Since we have resolved the County's issues adversely to it regarding the trial court's summary judgment, which held that the Deputies' procedural due process rights were violated, we need not address the essentially identical substantive due process claim. *See Ingram*, 688 F.Supp. at 1157. Accordingly, we do not reach the County's issues ten, eleven, and twelve concerning the Deputies' substantive due process claim.

## DENIAL OF POST–JUDGMENT MOTION

In issues nineteen and twenty the County contends the trial court erred in denying its post-judgment motion for new trial, JNOV, and remittitur, and in entering judgment on the jury's damages award.

## A. Standards of Review

### 1. Denial of Motion for New Trial

We review the denial of a motion for new trial under an abuse of discretion standard. *Henry v. Halliburton Energy Servs., Inc.*, 100 S.W.3d 505, 510 (Tex. App.-Dallas 2003, pet. denied). Under this standard, the court of appeals may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

### 2. Denial of Motion for Remittitur

The standard for reviewing a trial court's denial of a motion for remittitur is factual sufficiency of the evidence. *Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 354 (Tex.App.-Tyler 1998, pet. denied); *see Bentley v. Bunton*, 94 S.W.3d 561, 620 (Tex.2002). The court of appeals should employ the same test for determining excessive damages as for any factual sufficiency question. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). When considering a factual sufficiency challenge to a jury's damages award, we must consider and weigh all of the evidence, not just that evidence which supports the award. *Id.* at 406–07.

When the jury is asked to award a single amount of damages, but is told that it may consider various elements in arriving at that amount, a challenge to the damages award must address all the elements that could have been considered by the jury in making its total, single-amount award. *Golden Eagle Archery,*

*Inc. v. Jackson,* 116 S.W.3d 757, 771 (Tex. 2003). "If there is just one element that is supported by the evidence, the damages award will be affirmed if it is supported by the evidence." *Id.* (quoting *Greater Houston Transp. Inc. v. Zrubeck,* 850 S.W.2d 579, 589 (Tex.App.-Corpus Christi 1993, writ denied)). A reviewing court may set aside the damages award only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id* at 773.

■■■ Acknowledging that an appeals court is not a fact finder, we may not substitute our judgment for that of the jury. *See id.* Accordingly, we afford the jury great discretion in assessing the money equivalents to injuries such as mental anguish and pain and suffering. *Brookshire Bros.,* 979 S.W.2d at 354.

### 3. Denial of Motion for JNOV

■■■ "A trial court may disregard a jury finding and grant a motion for JNOV only when there is no evidence to support the finding." *Shell Oil Prods. Co. v. Main St. Ventures, L.L.C.,* 90 S.W.3d 375, 387 (Tex.App.-Dallas 2002, pet. dism'd by agr.) (citing *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990)). Thus, we "review the trial court's determination under a legal sufficiency standard, considering only the evidence and reasonable inferences that support the jury's finding." *Id.* If more than a scintilla of evidence exists, the evidence is legally sufficient. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

## B. Application of Law to Facts

### 1. Motion for New Trial

The County's arguments on appeal are virtually unchanged from the arguments that failed before the trial court. Because we have concluded there was no error in the trial court's judgment on all issues concerning liability, we conclude the trial court did not abuse its discretion in denying the County's motion for new trial.

### 2. Motion for Remittitur and Judgment on the Jury's Damages Award

The County also appeals the trial court's denial of its alternative motion for remittitur. Here, the record shows the jury was asked to award a single amount of damages for each Deputy. It was instructed to consider three elements in arriving at its single-amount award; i.e., lost earnings, lost employee benefits other than loss of earnings, and mental anguish and emotional distress.

■■■ As to Stanley Gaines, the County preserved this issue by attacking all bases for the damages award. The County attacks vigorously the lost earnings and mental anguish and emotional distress elements of the damages awards to Gilliand and Avina. However, it fails to address lost employee benefits as to Gilliand and Avina. Thus, the County waived its right to complain of factual insufficiency of the damages award to Gilliand and Avina. *See Zrubeck,* 850 S.W.2d at 589. Even if the County had addressed each element of the damages, as described below, we conclude the evidence is factually sufficient to support the jury's awards.

The jury awarded Jim Gilliand $523,560. Expert testimony established that Gilliand lost income of $49,021 and stood to lose up to $410,009 in future income. Although the County's brief did not challenge Gilliand's lost employee benefits other than earnings, Gilliand and expert witness Robert L. Bailes testified that employee benefits accounted for a substantial loss to Gilliand. In addition to receiving traditional medical and retirement benefits, as licensed peace officers, the Deputies could supplement their County salary with part-time security work. Gilliand testified he

worked security jobs for various grocery stores and nightclubs, earning up to $30 per hour, but when he was terminated, he was no longer able to secure that employment. As for other damages, the record also shows that as a result of his termination, Gilliand suffered sleeping problems, suicidal thoughts, hyperventilation leading to blackout, and the breakdown of close relationships. As a result of his termination, and resulting loss of income, he lost his home and car. The record shows that after selling virtually everything he owned, Gilliand suffered the humiliation of having to live in a friend's tool shed. All three elements are supported by factually sufficient evidence.

Sonia Avina received an award of $608,505. Expert testimony established that Avina lost income of $44,379 and stood to lose up to $965,289 in future income. Avina and Bailes testified that employee benefits accounted for a substantial loss to Avina because, in addition to receiving traditional medical and retirement benefits, her status as a licensed peace officer enabled her to supplement her County salary with part-time security work. Avina and Bailes testified that not only did Avina earn about $25 an hour working security for grocery stores and nightclubs, but she also received free rent in exchange for doing security work at her apartment complex. The record shows that as a result of her termination, she was no longer able to secure this part-time work. Also, she was not able to provide housing for her three children and had to send them to live with a grandparent in a converted garage apartment. As for mental anguish and pain and suffering, Avina experienced sleeplessness, stress, mood change, and digestive problems. All three elements are supported by factually sufficient evidence.

We turn now to the County's factual sufficiency challenge concerning Gaines' $400,000 award. An expert witness testified and presented exhibits showing that Gaines' lost income and lost employee benefits totaled about $40,000. Because Gaines lived for only ten months after his dismissal, his economic damages were relatively small. However, the record reveals that Gaines' mental anguish and pain and suffering contributed to his death. The record shows that Gaines suffered headaches, crying spells, stress, depression, and sleeplessness as a result of his termination. It also reveals that Gaines began to withdraw, causing changes in his relationship with his wife. Gaines sought medical treatment for these problems and began taking anti-depressants. Finally, expert testimony established that stress was a factor in causing the asthma attack that led to Gaines' death. We find factually sufficient evidence in the record that supports each element the jury was instructed to consider in reaching the amount of Gaines' damages.

The record shows that the County provided no evidence to rebut the Deputies' expert testimony regarding the economic impact of their terminations, and merely cross-examined the Deputies' witnesses in an attempt to raise doubt about their mental anguish evidence. Moreover, the reviewing court affords great deference to the jury's assessment of mental anguish and pain and suffering damages. *See Maritime Overseas Corp.*, 971 S.W.2d at 407.

Based upon the foregoing analysis, we conclude the jury's damages award was not so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. Accordingly, we conclude the evidence is factually sufficient to support the jury's damages award. We conclude the trial court did not err in denying the County's motion for remittitur.

The County next argues the trial court abused its discretion in entering judgment on the jury's damages verdict. However, in reviewing a trial court's denial of remittitur, the proper standard is factual sufficiency of the evidence, not abuse of discretion. *See id.* at 406–07; *Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex.1987).

### 3. Motion for JNOV

Finally, we address the County's alternative motion that the trial court enter a take nothing judgment in favor of the County. We have concluded above that there was no error in the trial court's judgment on all issues concerning liability. Because we have also concluded the evidence supporting the damages award is factually sufficient, we necessarily conclude the evidence was legally sufficient to support the damages awarded and the trial court did not err in denying the County's motion for JNOV.

Accordingly, we resolve the County's issues nineteen and twenty against it.

### ATTORNEYS' FEES

Finally, the County contends the trial court abused its discretion in awarding attorneys' fees, arguing that the Deputies' counsel expended an unreasonably large number of hours at unreasonably high hourly rates. The issue of attorneys' fees was tried to the court, separate from the jury trial on damages.

### A. Standard of Review

■■■ The allowance of attorneys' fees rests in the sound discretion of the trial court. Therefore, we do not reverse its judgment without a showing of abuse of discretion. *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990).

### B. Applicable Law

■■■ In the instant case, the trial court awarded attorneys' fees based on the "lodestar" method of calculation. Under this method, the court first determines the number of hours reasonably spent by counsel on the matter, then multiplies those hours by an hourly rate the court deems reasonable for similarly complex, non-contingent work. *Haggar Apparel Co. v. Leal,* 100 S.W.3d 303, 315 (Tex.App.-Corpus Christi 2002, pet. filed); *Dillard Dep't Stores, Inc. v. Gonzales,* 72 S.W.3d 398, 412 (Tex.App.-El Paso 2002, pet. denied). The resulting amount is commonly referred to as the "lodestar" figure. *Guity v. C.C.I. Enter.,* 54 S.W.3d 526, 528 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The trial court may then adjust the lodestar figure upward or downward to account for the well-established factors first listed in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717–19 (5th Cir. 1974). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required; (4) the effect on other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the ability of the attorney; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases. *Guity,* 54 S.W.3d at 529 (citing *Johnson,* 488 F.2d at 717–19). If some of the factors are accounted for in the lodestar amount, they should not be considered when making adjustments. *Dillard Dep't Stores,* 72 S.W.3d at 412.

### C. Application of Law to Facts

■■■ The trial court's findings of facts and conclusions of law as to the attorneys'

fee award chronicles the proceedings leading up to trial as well as the extensive pleadings filed and briefing supplied to the court in all phases of the case. Also, the findings reflect that the trial court examined the credentials of each person who worked on the Deputies' suit and their respective hours billed. After its thorough review, the trial court concluded that the number of hours spent on the case were extensive, but reasonable, because the Deputies' attorneys efficiently pursued the case. Further, the trial court noted that the County stipulated that the standard hourly rates charged by all members of the Deputies' legal team were reasonable. Consistent with the authorities, the trial court multiplied these total hours by the standard hourly rate to arrive at the "lodestar" figure.

The trial court then evaluated the *Johnson* factors and adjusted the lodestar figure upward. At this bench trial, as to attorneys' fees, Deputies' counsel presented evidence on all twelve of the *Johnson* factors. The County's counsel presented no evidence refuting the Deputies' evidence and, in fact, agreed that the case was "fairly complex," the outcome exceeded the expectations of both parties, a contingency fee arrangement was necessary for the Deputies to obtain representation, and the contingency rate of forty percent was fair. Having reviewed the entire record, including the trial court's thorough analysis of the attorneys' fees, we conclude the trial court did not abuse its discretion in awarding attorneys' fees to the Deputies. We resolve the County's twenty-first issue against it.

## CONCLUSION

For the reasons set out above, we conclude the trial court properly granted summary judgment on liability grounds in favor of the Deputies and against the County. We further conclude the trial court did not err in denying the County's post-verdict motion, nor did it abuse its discretion in entering judgment on the jury's verdict and awarding attorneys' fees. Having resolved the County's issues against it, we affirm the trial court's judgment.