**DALLAS COUNTY and Mike Dupree, Appellants,**

v.

**Armando H. GONZALES, Appellee.**

**No. 05–04–01015–CV.**

Court of Appeals of Texas, Dallas.

Jan. 23, 2006.

Rehearing Overruled March 3, 2006.

Cynthia Keely Timms, Chrysta L. Castaneda, William Scott Hastings, Locke Liddell & Sapp LLP, Dallas, for Appellant.

Emil Lippe, Jr., Law Offices of Lippe & Associates, Dallas, for Appellee.

Before Justices WHITTINGTON, RICHTER, and FITZGERALD.

## OPINION ON REHEARING

Opinion by Justice FITZGERALD.

We grant Dallas County and Mike Dupree's motion for rehearing. We withdraw the opinion and vacate the judgment of November 1, 2005.

This case involves two different lawsuits by Armando H. Gonzales against Dallas County and, in one of the lawsuits, Mike Dupree. The County filed pleas to the jurisdiction in both cases, which the trial court denied. Dupree moved for summary judgment asserting official immunity, which the trial court also denied. The County brings interlocutory appeals of the denials of the pleas to the jurisdiction. Dupree also appeals the denial of his motion for summary judgment asserting official immunity. We consolidated the appeals. We affirm the denial of one of the pleas to the jurisdiction and reverse the denial of the other; we affirm the denial of the motion for summary judgment in part and reverse in part.

## PLEA TO THE JURISDICTION

In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction over lawsuits against the State or other governmental units unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). Whether a court has subject-matter jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226; *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex.2002). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demon-

strate the court's jurisdiction to hear the cause. *Miranda,* 133 S.W.3d at 226. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *Id.* at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c), and the burden is on the government to meet the summary judgment standard of proof. *Id.* This standard "protect[s] the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* (quoting *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000)).

Under the rule 166a(c) summary judgment standard, the burden of a defendant moving for summary judgment is to conclusively disprove at least one essential element of the plaintiff's cause of action or to conclusively establish every element of an affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Thomas v. Omar Inv., Inc.,* 156 S.W.3d 681, 683 (Tex. App.-Dallas 2005, no pet.). Conversely, the plaintiff can bar summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *McAnally v. Friends of WCC, Inc.,* 113 S.W.3d 875, 879 (Tex.App.-Dallas 2003, no pet.). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed, but convincing the court that the defendant's legal position is unsound. *Turner v. Church of Jesus*

*Christ of Latter–Day Saints,* 18 S.W.3d 877, 886 (Tex.App.-Dallas 2000, pet. denied).

The appeals from the two lawsuits involve different facts, issues, and parties. Accordingly, we address them separately. Cause number 01–080774–F involves appellee's allegations concerning his termination and reinstatement in 1997–1998, and cause number 01–02585–F involves appellee's termination in 2000–2001.

## TERMINATION BY CONSTABLE CASTILLO

The first issue asserts the trial court erred in denying the plea to the jurisdiction in trial court cause number 01–080774–F.

### Background

In 1997, appellee was a deputy constable working under Dallas County Precinct 6 Constable Castillo. Appellee alleged Castillo told him to tell bail bondsmen they would receive assistance in apprehending bond jumpers if they made political contributions to Castillo. Appellee alleged, "In other words, Castillo was soliciting bribes for performance of his duties as an elected official." Appellee questioned the legality of this practice, and in September 1997, he reported it to a Dallas County assistant district attorney. On October 3, 1997, appellee testified against Castillo before a grand jury investigating Castillo. Appellee was terminated from his position as a Dallas County deputy constable on December 11, 1997.

Appellee alleged in his petition and asserted in an affidavit that he filed a grievance the next day, December 12, 1997, complaining of his termination for reporting Castillo's unlawful activities, but the grievance was not file-stamped until December 15, 1997. In this grievance form,

appellee stated the "results sought" were "backpay—No loss in benef[its]."

On December 31, 1997, appellee was sent a letter from the county personnel and civil service department informing him of the date, time, and place of his hearing before the civil service commission. The letter also stated, "Please submit another grievance form and explicitly outline what you are grieving and the relief sought."

On January 20, 1998, appellee filed a "Supplement to Formal Grievance Form" requesting reinstatement "with all rights and benefits previously held and that he be compensated for reasonable attorney's fees and expenses required to appeal said termination."

The civil service commission held a hearing on appellee's grievance on January 26, 1998. Most of the testimony at the hearing concerned a similarly situated deputy constable who had also been terminated by Castillo. As to both deputies, Castillo failed to follow the Dallas County policies for terminating an employee. Castillo agreed to the reinstatement of the other deputy constable and then agreed to appellee's reinstatement with back pay, benefits, and the same service vehicle. Appellee's attorney then inquired of the commissioners about appellee's other damages:

[Appellee's Counsel]: In the context of the Civil Service Commission, how is it addressed as to monetary loss. This man lost his car, had no Christmas for his daughter, hasn't been able to pay his attorney even.

[Commissioner Jackson]: It's not.

[Appellee's Counsel]: He is out all of those things then.

[Commissioner Price]: Right. Yeah, you can do civilly whatever you need to do with reference to the constable if there is some harm that is derived as a result of his action. All I'm saying

is as far as this Commission is concerned and the county is concerned, we can only do the back pay, the benefits, full reinstatement.

Appellee returned to work the next day, and on February 3, 1998, the Commissioners Court officially ordered appellee's reinstatement with back pay, no break in service, and all benefits and "structure adjustments."

After being reinstated by the County, appellee filed suit in federal district court against the County, Castillo, and two other individuals alleging various federal causes of action and violation of the Texas Whistleblower Act. In December 1999, the federal court granted the County's motion for summary judgment on all causes of action except the Texas Whistleblower Act. The court denied the motion for summary judgment filed by the individual defendants asserting qualified immunity, and the individual defendants appealed that ruling. On May 4, 2001, the Fifth Circuit Court of Appeals held the individual defendants were entitled to qualified immunity on appellee's federal claims, and it reversed the district court and remanded the case to it. *See Gonzales v. Dallas County, Tex.*, 249 F.3d 406 (5th Cir.2001). The Fifth Circuit issued its mandate on May 31, 2001. On August 14, 2001, the trial court signed an "Agreed Order of Dismissal" dismissing the suit "in its entirety without prejudice to the plaintiff's right to refile his claim under the Texas Whistleblower Act in the appropriate state forum under Texas law." (Citation omitted.)

Appellee then filed his Whistleblower cause of action and his federal causes of action against the County in state district court. The County moved for summary judgment on appellee's federal causes of action based on res judicata and collateral estoppel from the federal litigation. The County also moved for summary judgment

on the Whistleblower cause of action. On April 2, 2003, the trial court granted this first motion for summary judgment as to the federal causes of action but denied it as to the Whistleblower cause of action.

On March 9, 2004, the County filed a plea to the jurisdiction asserting the County was immune from suit and moved to dismiss the suit for want of jurisdiction. The trial court denied the motion on July 2, 2004, and the County filed its notice of appeal on July 19, 2004.

## Timeliness of Appeal

Appellee argues we lack jurisdiction over this interlocutory appeal because the County should have appealed the April 2, 2003 denial of its first motion for summary judgment on the Whistleblower cause of action. Appellee asserts that the first motion for summary judgment was a plea to the jurisdiction, and the County's failure to timely appeal that order bars its appeal of the July 2, 2004 order. Having reviewed the first motion for summary judgment, we conclude it is not a plea to the jurisdiction. Although the first motion for summary judgment contains some of the same arguments that appellee's Whistleblower cause of action lacks merit, it contains no assertion or argument that the trial court lacked subject-matter jurisdiction over the cause. *See Freeman v. Wirecut E.D.M., Inc.*, 159 S.W.3d 721, 725 (Tex.App.-Dallas 2005, no pet.) (describing plea to jurisdiction as challenge to trial court's authority to determine subject matter of suit). Accordingly, it was not a plea to the jurisdiction, and its denial was not subject to an interlocutory appeal. We conclude the County's appeal is timely.

## Whistleblower Act

The Whistleblower Act provides, "A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a) (Vernon 2004). Violation of this prohibition entitles the employee to injunctive relief, actual damages, costs, attorney's fees, reinstatement to the former or equivalent position, compensation for lost wages, and reinstatement of benefits and seniority. *Id.* § 554.003. The Act waives the government's sovereign immunity to suit and liability "to the extent of liability for the relief allowed under this chapter for a violation of this chapter." *Id.* § 554.0035. The County argues it is not liable under the Act—and is thus immune from suit—for various reasons. *See Miranda*, 133 S.W.3d at 225–26 (determination of jurisdictional issue may require resolution of merits of case).

### *Applicability of Act to Constable's Actions*

The County argues appellee does not qualify for relief under the Act because his "whistleblowing" does not fall under the Act. The violation of the law reported must be "a violation of law by [1] the employing governmental entity or [2] another public employee." Tex. Gov't Code Ann. § 554.002(a). In its plea to the jurisdiction and on appeal, the County argues that reporting the illegal activities of Constable Castillo did not fall under the Act because, the County asserts, the constable, as an elected official, is not a "public employee." The County, however, failed to argue that the violations of law by an elected constable are not those of the "employing governmental entity." By not disproving as a matter of law both alternatives under section 554.002(a), the County has failed to meet its burden of conclusive-

ly disproving an element of appellee's cause of action. See Miranda, 133 S.W.3d at 228.

## Adverse Personnel Action

■ The County next argues it did not violate the Act because it did not terminate appellee's employment or otherwise take adverse personnel action against him. The Act requires the plaintiff be terminated by a "state or local governmental entity," TEX. GOV'T CODE ANN. § 554.002(a); the County argues Constable Castillo, not the County, terminated appellee. The County argues that far from taking adverse personnel action against appellee, the County reinstated appellee. We do not agree that the County did not terminate appellee. The record includes the personnel policies from the County's code, which provide that an employee may bring a grievance after his termination, but "[u]tilizing the grievance system will not alter an employee's termination date." DALLAS COUNTY CODE § 86–595(a). This provision shows, contrary to the County's argument, that an employee who is terminated, brings a grievance, and is reinstated was in fact terminated at the time he brought his grievance; that he was later reinstated does not change the fact that he had been terminated. Regardless of who made the decision or communicated it to appellee, when appellee's employment as a deputy constable ceased between December 11, 1997 and January 26, 1998, it was because he had been terminated by the County, which is a "local governmental entity." See TEX. GOV'T CODE ANN. § 554.001(2) (defining "Local governmental entity"). Furthermore, the fact that the County "reinstated" him is evidence that he was terminated; if he had not

been terminated, then it would have been unnecessary to reinstate him.

■ The County next argues that its act of reinstating appellee relieves it of liability under the Act.[1] As the County observes, the Act requires employees to initiate grievance procedures before bringing a lawsuit. The County asserts that this requirement "provides the government an opportunity to redress the employee's complaint without having to resort to time-consuming and expensive litigation." See Johnson v. City of Dublin, 46 S.W.3d 401, 405 (Tex.App.-Eastland 2001, pet. denied); Gregg County v. Farrar, 933 S.W.2d 769, 775 (Tex.App.-Austin 1996, writ denied). But when the grievance procedure does not fully redress the employee's complaint, the Act does not bar a claim for actual damages not satisfied by the redress the governmental employer provided. Cf. City of Ingleside v. Kneuper, 768 S.W.2d 451, 457 (Tex.App.-Austin 1989, writ denied) (wrongfully terminated employee awarded reinstatement by court also entitled to damages for loss of future earning capacity). If the legislature had intended for reinstatement with back pay, benefits, and seniority to bar an action for actual damages, it would have included such language in the Act. Cf. Martin v. Tex. Dental Plans, Inc., 948 S.W.2d 799, 803 (Tex.App.-San Antonio 1997, writ denied) (monetary damages and reinstatement both recoverable in suit under workers' compensation Anti–Retaliation Law; if legislature had intended to limit employees to one but not both remedies, it would have used limiting or disjunctive language in statute).

## Grievance Procedure

■ The County next argues appellee did not initiate and exhaust the County's

---

1. The County cites Carter v. Castillo, No. 3:99–CV–0047–X, 2001 U.S. Dist. LEXIS 1264 (N.D.Tex. Feb. 7, 2001). In that case, the employee filed a grievance and recovered all

the relief he requested in the grievance for the adverse personnel actions he established. Appellee, however, did not receive all the relief he requested in his grievance.

grievance and appeal procedures with respect to the relief he seeks in this case. However, the County admits in its brief on appeal that appellee requested in his grievance part of the relief he seeks—his attorney's fees and expenses in pursuing the grievance.[2] The County instead argues that other damages appellee now seeks were not exhausted in the grievance procedure.

■ The issue before us in a plea to the jurisdiction is whether the plaintiff has pleaded a cause of action over which the trial court has subject-matter jurisdiction, not the plaintiff's right to recover each element of damages it pleaded. *Webb County, Tex. v. Sandoval,* 88 S.W.3d 290, 297 (Tex.App.-San Antonio 2002, no pet.); *City of Cleburne v. Trussell,* 10 S.W.3d 407, 410 (Tex.App.-Waco 2000, no pet.). The record shows appellee exhausted his administrative remedy as to at least one of his claims for damages in this litigation, his claim for attorney's fees and expenses in pursuing the grievance. Thus, the trial court has jurisdiction over appellee's Whistleblower cause of action. The County's argument that appellee cannot recover other damages does not attack the trial court's subject-matter jurisdiction over the cause of action and is outside our limited jurisdiction in this interlocutory appeal.

*Limitations, the Grievance Procedure, and Filing Suit in Federal Court*

Next, the County argues appellee's cause of action is barred by the Act's ninety-day limitations period. Section 554.005 provides, "Except as provided by Section 554.006, a public employee who

seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred...." TEX. GOV'T CODE ANN. § 554.005(1). Section 554.006 requires an employee to "initiate action under the grievance or appeal procedures of the employing ... governmental entity ... before suing" under the Act. *Id.* § 554.006(a). The ninety-day limitations period is tolled while the employee pursues the administrative remedy.[3] *Id.* § 554.006(c).

■ In this case, appellee was terminated on December 11, 1997. His grievance was file stamped four days later on December 15, 1997. Appellee's hearing before the civil service commission was on January 26, 1998, at which time he was reinstated. Appellee filed suit in federal district court on April 24, 1998. The County asserts this filing was untimely because, accounting for the tolling during the grievance procedure starting on December 15, 1997 and ending on January 26, 1998, appellee filed suit ninety-two days after his termination. However, appellee filed an affidavit stating that he handed the grievance to the clerk on December 12, 1997, one day after his termination. If December 12, 1997 is taken as the date of filing instead of December 15, 1997, then, with the tolling provisions of section 554.006(c), appellee's lawsuit was timely filed eighty-nine days after his termination.

■ A document is filed when it is given into the custody of the clerk; the file stamp is prima facie evidence of the date of filing, but it is subject to rebuttal. *See*

---

2. The County states in its brief, "With the exception of the $1,000 he sought in attorney's fees for the civil service appeal, Dallas County awarded Gonzales everything he grieved."

3. Section 554.006(d) sets out filing deadlines and tolling provisions when the grievance procedure takes more than sixty days, but those provisions are not relevant in this case because the grievance was resolved within sixty days. *See* TEX. GOV'T CODE ANN. § 554.006(d).

*Mr. Penguin Tuxedo Rental & Sales, Inc. v. NCR Corp.,* 787 S.W.2d 371, 371–72 (Tex.1990) (per curiam). Appellee's affidavit raises a genuine issue of material fact regarding the date of filing of the grievance and thus the timeliness of the filing of the lawsuit. Accordingly, the County has failed to establish as a matter of law that appellee's suit is barred by the Act's 90-day statute of limitations.[4]

### Limitations and Filing Suit in State Court

▮▮▮▮▮ In its reply brief, the County argues its liability is barred by limitations because more than ninety days passed between appellee's termination and his filing this suit in state court. In fact, more than three and a half years passed between appellee's termination and his filing suit in state court. In the trial court, the County argued this expanse of time resulted in limitations barring appellee's suit. In this Court, however, the County did not present this complaint in its brief on appeal but raised it for the first time in its reply brief. A reply brief may not be used to raise new issues. The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's briefs but not raised by the appellant's original brief. *Penley v. Westbrook,* 146 S.W.3d 220, 227 (Tex.App.-Fort Worth 2004 pet. filed); *Howell v. Tex. Workers' Comp. Comm'n,* 143 S.W.3d 416, 439 (Tex. App.-Austin 2004, pet. denied). Accordingly, we conclude this issue is not properly before us.

### Jurisdiction to Review Civil Service Commission

▮▮▮▮ Finally, the County argues the trial court lacked jurisdiction to review the civil service commission's decision not to award the damages appellee seeks. The County argues appellee should have appealed the Commission's decision to the district court pursuant to section 158.012 of the Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. § 158.012 (Vernon 1999). Section 158.012 provides, "A county employee who, on a final decision by the commission, is demoted, suspended, or removed from the employee's position may appeal the decision by filing a petition in a district court in the county within 30 days after the date of the decision." *Id.* § 158.012(a). In this case, after the final decision of the civil service commission, appellee was fully reinstated and was not "demoted, suspended, or removed from the employee's position." Thus, section 158.012 does not apply to appellee.

### Conclusion

We conclude the trial court did not err by denying the plea to the jurisdiction in appellee's lawsuit concerning his termination and reinstatement in 1996 and 1997, trial court cause number 01–08074–F. We overrule the first issue.

### TERMINATION BY CONSTABLE DUPREE

The second, third, and fourth issues assert the trial court erred in denying the

---

4. Appellee argues the tolling during grievance procedure should not end with the January 26, 1997 hearing but should end on February 3, 1997 when the Commissioners Court officially approved the action taken at the hearing. Tolling the limitations period from December 15, 1996 to February 3, 1997 would make appellee's petition timely filed without considering whether December 12, 1997 should be the initial day of tolling. Because under either scenario the County has failed to establish as a matter of law that appellee's federal petition was filed outside the ninety-day limitations period, we need not determine whether the January 26 date of the hearing or the February 3 date of the official decision approving the action taken at the hearing marked the end of the tolling period.

plea to the jurisdiction and motion for summary judgment based on official immunity in trial court cause number 01–02585–F.

## Background

Appellee alleged that on January 24, 2000, he injured his back while arresting a suspect. He filed a workers' compensation claim due to the injury in February 2000. On June 21, 2000, appellee's doctor checked the place on a form stating appellee was "disabled to perform the duties appurtenant to his/her regular employment/school beginning: 6–21–00," "Restriction limited to light work," and wrote on the form "No driving, no in and out of vehicle, no stairs, will be re-eval. in 2 weeks." On June 23, 2000, Constable Castillo offered appellee light-duty assignments of "Bailiff functions, Answering phones (to include some dispatching duty), Other duties as assigned that meet your restrictions." Appellee initially refused in order to talk to his doctor, but after the terms were modified to six-hour work days, he accepted them. Appellee did not work from June 21 through June 26, 2000. From June 27 to August 10, 2000, appellee worked mostly six-hour days according to the terms Castillo had offered. From August 11 to December 10, 2000, appellee did not work.

On August 9, 2000, appellee's doctor stated that appellee would be disabled to perform his job duties beginning August 14, 2000 and would return to work on August 28, 2000. After August 28, 2000, the doctor continued to extend appellee's disability period. On September 14, 2000, appellee filed an application for disability insurance benefits with the Social Security Administration. On October 21, 2000, appellee was determined to have "an impairment rating of 15% of the whole person" and to have reached his point of maximum medical improvement on October 14, 2000.

On December 5, 2000, Castillo sent appellee a letter requesting appellee provide an update of his medical status and informing appellee, "If you are unable to perform your essential job duties on December 31, 2000, we are within our rights to terminate your employment with Dallas County." Appellee returned to work for six-hour days from December 11, 2000 to December 19, 2000. Appellee did not work after December 19, 2000. On December 20, 2000, appellee filed a request for medical leave of absence starting December 22, 2000 and continuing for six to eight weeks. The application was supported by appellee's physician's certification that appellee would have cervical-fusion surgery on "1/2/00 [sic]" and would require three months' care. Appellee underwent the surgery on January 20, 2001.

Meanwhile, there was a change in the office of Constable, Precinct 6. Castillo's term ended on December 31, 2000, and the newly elected constable, Dupree, took office January 1, 2001. Before taking office, Constable–Elect Dupree sent appellee and several other deputy constables letters dated December 11, 2000 stating:

This letter serves to notify you that effective January 1, 2001, your services under my administration will not be required. Any Dallas County owned property that was issued to you should be surrendered to your immediate supervisor. Your cooperation on this matter is expected.

The County and Dupree believed they were under no obligation to keep, swear in, or re-hire deputy constables whose terms had ended. *See Dallas County v. Wiland,* 124 S.W.3d 390, 394 (Tex.App.-Dallas 2003, pet. granted). In his affidavit, Dupree stated he chose not to swear in appellee "because I did not have full faith and

confidence in him." In his deposition, Dupree testified he chose not to swear in some of the deputy constables due to his lack of faith and confidence in them. However, he testified he chose not to swear in appellee because he had learned in October 2000 that appellee had been terminated from employment for exceeding the authorized leave time without returning to work.

Appellee's employment with Dallas County ceased on Friday, December 29, 2000.

Appellee and the other deputy constables filed grievances; appellee filed his on December 27, 2000 and a second one on January 3, 2001. In the grievances, appellee stated he was "notified of disciplinary action" on December 27, 2000. In the blank for "Summarize disciplinary action taken," appellee wrote, "Termination by letter then by phone by Const elect & Const Mike Dupree." In the blank for "State reason for grievance and results sought," appellee wrote, "To be reinstated to Depty [sic] in 2001." On February 27, 2001, the civil service commission denied appellee and the other deputies a hearing on their grievances because their complaints about being terminated by Constable–Elect Dupree were not "grievable."

On January 29, 2001, appellee applied for disability benefits with the Texas County and District Retirement System. In the forms, appellee acknowledged he was "physically incapacitated to engage in any gainful occupation, that such incapacity is likely to be permanent" (emphasis omitted).

On February 8, 2001, the Texas Workforce Commission determined appellee was entitled to benefits because the Commission's "investigation found your former employer discharged you from your last work due to your medically verifiable inability to work." On November 14, 2001,

the Social Security Administration found appellee "has been under a disability, as defined in the Social Security Act, since August 14, 2000." Additional medical and workers' compensation reports in the record show appellee has remained disabled through April 19, 2002 with no expected date of ability to return to work.

On March 29, 2001, appellee sued the County and Dupree, alleging they had violated chapter 451 of the Labor Code by terminating him for filing a workers' compensation claim. Appellee also pleaded "a cause of action for interference with plaintiff's rights under the Texas Workers' Compensation Act." Besides these causes of action, appellee pleaded causes of action that appellants violated 42 U.S.C. section 1983 by discriminating against appellee for engaging in "speech" by filing a claim under the Workers' Compensation Act and by denying appellee's substantive and procedural due process right to the protections of the County's grievance system by declaring his complaint not "grievable." On March 19, 2004, appellants filed a plea to the jurisdiction, a motion for summary judgment, and special exceptions. The trial court denied the plea and motion on July 2, 2004, and appellants timely appealed on July 19, 2004.

### Workers' Compensation Retaliation Claims

The second issue asserts the trial court erred in denying the plea to the jurisdiction on appellee's causes of action for retaliation for filing a workers' compensation claim. Appellee asserted two causes of action: (1) expressly brought under section 451.002 of the Labor Code, alleging violation of section 451.001 of the Labor Code; and (2) tortious interference with workers' compensation rights.

*Statutory Anti–Retaliation Law*

Section 451.001 of the Labor Code, the Anti–Retaliation Law, provides, "A person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith...." TEX. LAB.CODE ANN. § 451.001 (Vernon 1996). Section 451.002 provides that a person who violates section 451.001 is liable for reasonable damages, and the employee discharged in violation of section 451.001 is entitled to reinstatement in the former position of employment. *Id.* § 451.002.

The supreme court has held that the State Applications Act, now codified in section 504.002 of the Labor Code, makes the Anti–Retaliation Law applicable to state agencies. *See id.* §§ 451.001, 504.002(a)(10), (b) (Vernon Supp.2005); *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 8 (Tex.2000). Section 504.002 makes the Anti–Retaliation Law applicable to a "political subdivision," which is defined in section 504.001(3) as including a county. TEX. LAB.CODE ANN. § 504.001(3) (Vernon Supp.2005). The supreme court went on to hold that the State Applications Act waived a political subdivision's immunity under the Anti–Retaliation Law up to the limits on damages set out in the Tort Claims Act. *Kerrville State Hosp.,* 28 S.W.3d at 9–10; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.023 (Vernon 2005); TEX. LAB.CODE ANN. § 504.002(c) (Vernon Supp.2005).

Although immunity against suit for the Anti–Retaliation Law is waived by the Applications Act, the employee's failure to exhaust administrative remedies before bringing suit on the Anti–Retaliation Law deprives the trial court of jurisdiction over that cause of action. *Van Indep. Sch. Dist. v. McCarty,* 165 S.W.3d 351, 354 (Tex.2005); *Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan,* 51 S.W.3d 293, 294 (Tex.2001) (per curiam). The County argues that appellee's failure to assert his Anti–Retaliation Law claims in his December 27, 2000 and January 3, 2001 grievances resulted in his failure to exhaust his administrative remedy, thereby depriving the trial court of subject-matter jurisdiction over this cause of action.

The County's personnel policies state that a grievance may be filed for various reasons, including improper application of rules, regulations, and procedures; and demotion, suspension, or dismissal. DALLAS COUNTY CODE § 86–1003. The Commission's actions resulting in demotion, suspension, or termination may be appealed to a district court within thirty days after written notification of the Commission's decision. *Id.* § 86–1007(*o*)(3). We conclude appellee's claim of wrongful termination for filing a workers' compensation claim was subject to the County's grievance procedures.

Appellee argues his grievances were sufficient and relies on this Court's opinion in *County of Dallas v. Wiland,* 124 S.W.3d 390 (Tex.App.-Dallas 2003, pet. granted). Appellee asserts that in *Wiland,* other deputy constables terminated in December 2000 recovered damages on their causes of action even though their grievances were identical to his. *Wiland,* although related factually to the case before us, did not involve the legal issue before us. In *Wiland,* three deputy constables, terminated by Dupree's decision not to swear them into office for another term, sued the County under 42 U.S.C. section 1983 alleging violations of their procedural and substantive due process rights by the County's failure to allow them the protections of the grievance procedure when it terminated them. *Id.* at 393–94. As it did to appellee, the civil service commission had deemed their terminations not "grievable" and took no action on their grievances.

*Id.* at 394. *Wiland,* however, did not concern a plea to the jurisdiction, and none of the deputy constables in *Wiland* brought a cause of action under the Anti–Retaliation Law.[5] Thus, *Wiland* is distinguishable.

Appellee also asserts exhaustion of administrative remedies should not be required because the County's determination that he had no right to the grievance system made the seeking of an administrative remedy futile. Appellee cites no authority for the argument that "futility" creates jurisdiction. Appellee's argument is essentially that the County's conduct estops it from asserting lack of jurisdiction due to his failure to exhaust administrative remedies. In *Wilmer–Hutchins Independent School District v. Sullivan,* however, the supreme court ruled that when exhaustion of administrative remedies is a jurisdictional prerequisite, such as in a cause of action under the Anti–Retaliation Law against a political subdivision, the government's conduct may not be used to excuse that prerequisite because jurisdiction cannot be conferred by estoppel. *Sullivan,* 51 S.W.3d at 294.

We conclude appellee's failure to assert in his grievances that his termination was a result of his filing a workers' compensation claim resulted in his failing to exhaust his administrative remedy. Because appellee did not exhaust his administrative remedy on this cause of action, the trial court lacked subject-matter jurisdiction over it, and the trial court erred by denying the plea to the jurisdiction on it.

### *Tortious Interference with Workers' Compensation Rights*

Appellee also pleaded "a cause of action for interference with plaintiff's rights under the Texas Workers' Compensation Act." Appellee alleged appellants "knowingly and willfully interfered with and attempted to vitiate the Plaintiff's recognized right to file a claim for workers' compensation benefits." He also alleged appellants' "intentional violation of Plaintiff's rights under Texas law" damaged him. The County asserts (1) there is no common-law cause of action for interference with workers' compensation rights against an employer and (2) that appellee's failure to exhaust his administrative remedy deprived the court of subject-matter jurisdiction over this cause of action.

 The workers' compensation system and its rights come from statutes, not the common-law. *Mingus v. Wadley,* 115 Tex. 551, 558, 285 S.W. 1084, 1087 (1926), *overruled on other grounds by Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000). "The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and *exclusive ....*" *Id.* (emphasis added). The Anti–Retaliation Law provides a complete remedy for an employee alleging discrimination for filing a workers' compensation claim. That law provides reinstatement to the employee's former position and all

---

**5.** The issues in *Wiland* were the trial court's summary judgment on liability in favor of the deputy constables, the denial of the City's motion for summary judgment on liability, the jury trial on the deputy constables' damages, and the bench trial on their attorney's fees. *Wiland,* 124 S.W.3d at 393–94. Thus, the issues in *Wiland* were whether the deputy constables' motion for summary judgment had proved the deprivation of their due process rights as a matter of law, whether the City had proved its lack of liability as a matter of law, and whether the deputy constables presented legally and factually sufficient evidence of damages and attorney's fees. *See generally id.* at 390–404. The issue of whether the deputy constables had exhausted any administrative remedy before bringing suit was not before the Court. *See generally id.*

"reasonable damages." TEX. LAB.CODE ANN. § 451.002 (Vernon 1996); *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 454 (Tex.1996). Because the rights appellee seeks to enforce and the remedy for their enforcement are derived from the Workers' Compensation Act and not from the common law, we conclude the enforcement remedy provided in the Workers' Compensation Act, the Anti–Retaliation Law, is the exclusive remedy for discrimination from the filing of a workers' compensation claim. Thus, appellee's only remedy for interference with his workers' compensation rights lies under the Anti–Retaliation Law and not the common law. Accordingly, we must determine whether the trial court had jurisdiction under the Anti–Retaliation Law to adjudicate appellee's claim of interference with his workers' compensation rights.

The portion of appellee's petition pleading interference with workers' compensation rights does not specify how appellants interfered with his rights. However, the pleading incorporates all the facts alleged earlier in the petition, and the only alleged act of interference with appellee's workers' compensation rights was appellee's allegation that he was terminated for filing a workers' compensation claim. As discussed above, appellee was required, and failed, to exhaust his administrative remedies before bringing suit under the Anti–Retaliation Law. Accordingly, the trial court lacked jurisdiction over appellee's cause of action for interference with workers' compensation rights. We conclude the trial court erred in denying the plea to the jurisdiction for this cause of action. We sustain the second issue.

### Civil Rights Claims

The third issue asserts the trial court erred in denying the plea to the jurisdiction on appellee's civil rights claims. Appellee brought these causes of action under 42 U.S.C. section 1983, which provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C.A. § 1983 (West 2003).

The County has no sovereign immunity from a section 1983 claim. *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *County of Dallas v. Sempe,* 151 S.W.3d 291, 300 (Tex. App.-Dallas 2004, pet. filed); *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 241–42 (Tex.App.-Dallas 2000, pet. denied). Nor does the failure to exhaust administrative remedies deprive a trial court of jurisdiction over a section 1983 claim. *Patsy v. Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Upton County v. Brown,* 960 S.W.2d 808, 820 (Tex. App.-El Paso 1997, no pet). Thus, a plaintiff bringing suit under section 1983 need not establish a waiver of immunity when bringing suit. *Nueces County v. Hoff,* 105 S.W.3d 208, 211 (Tex.App.-Corpus Christi 2003), *rev'd on other grounds,* 153 S.W.3d 45 (Tex.2004) (per curiam). Although the Eleventh Amendment provides immunity to the State and its agencies from suits under section 1983, that immunity does not extend to the County. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (Eleventh Amendment provides states with immunity from section 1983 claims); *Hoff v. Nueces County,* 153 S.W.3d 45, 47 (Tex.2004) (per curiam) (State's Eleventh Amendment immunity does not extend to counties).

To be entitled to the government's lack of immunity under section 1983, the plaintiff must plead a cause of action in which the deprivation of a federal right is implicated. *City of Fort Worth v. Robles,* 51 S.W.3d 436, 444 (Tex.App.-Fort Worth 2001, pet. denied). The County asserts appellee's section 1983 claims fail to allege the deprivation of federally protected rights and therefore fail to displace the County's immunity from suit. Thus, the County argues, the trial court lacked jurisdiction over appellee's civil rights claims. *See id.* We will examine appellee's claims and determine whether they allege the deprivation of federally protected rights.

### Free Speech

Appellee alleged the County violated section 1983 by terminating him for exercising his right of free speech under the First Amendment. The "speech" appellee alleged was his "filing a workers' compensation claim and asserting entitlement to recovery." The County argues that the "speech" alleged by appellee is not protected by the First Amendment.

To prevail on a claim of First Amendment retaliation, the plaintiff's speech must have involved a matter of public concern. *Johnson v. Louisiana,* 369 F.3d 826, 830 (5th Cir.2004); *Scott v. Godwin,* 147 S.W.3d 609, 616 (Tex.App.-Corpus Christi 2004, no pet.). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Discrimination by a public agency for an employee's speech that concerns only matters of the employee's personal interest and not matters of public interest is not actionable under section 1983 as a violation of the employee's First Amend-

ment rights. *See id.* at 147, 103 S.Ct. 1684. Whether speech involves a matter of public concern is a question of law. *Id.* at 148 n. 7, 103 S.Ct. 1684.

Whether a public employee's filing of a workers' compensation claim and his assertion of rights under the Workers' Compensation Act constitutes a matter of public concern entitled to First Amendment protection appears to be an issue of first impression in Texas. However, the Texas Supreme Court has determined that, under the Texas Open Records Act, workers' compensation claims are generally not subject to disclosure because they do not involve matters of "legitimate public concern." *Indus. Found. v. Tex. Indus. Accident Bd.,* 540 S.W.2d 668, 685 (Tex. 1976). Other jurisdictions have held the assertion of workers' compensation rights does not involve a matter of public concern under the First Amendment. *See O'Malley v. New York City Transit Auth.,* 829 F.Supp. 50, 53 (E.D.N.Y.1993); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 981 (E.D.Pa.1990), *aff'd,* 928 F.2d 396 (3rd Cir. 1991). In his brief, appellee does not explain how his workers' compensation claim and his assertion of his rights under the Workers' Compensation Act involved matters of public concern.

After reviewing the entire record, we conclude appellee's workers' compensation claim and assertion of rights under the Workers' Compensation Act involve only matters of appellee's personal interest. We perceive no issue of public concern in these matters. Because appellee's claim of First Amendment retaliation is not based on speech involving public concern, we conclude appellee's claim does not assert the deprivation of a federally protected right, and the trial court lacked jurisdiction over this cause of action.

*Due Process*

Appellee alleged appellants violated his Fourteenth Amendment right not to be deprived of property without due process of law. He alleged his deputy constable position was the property interest of which he was deprived, and the process he alleges appellants denied him was the County's grievance procedures with the rights to notice and hearings provided by those procedures. Appellee argues appellants denied him due process by concluding his claims were not "grievable" and by failing to follow the prescribed procedures of providing written determinations and grievance proceedings. Appellee's petition cites to this Court's opinion in *Wiland* and alleges he is entitled to the same legal holdings as the deputy constables in *Wiland*.

■■■■■ In analyzing a claim of deprivation of procedural due process, we apply a two-part test: we must determine (1) whether the plaintiff had a liberty or property interest entitled to procedural due process; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). In a substantive due process analysis, we determine (1) whether the plaintiff had a protected property interest and (2) if the government deprived him of that interest capriciously and arbitrarily. *City of Lubbock v. Corbin*, 942 S.W.2d 14, 21 (Tex.App.-Amarillo 1996, writ denied); *see Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (substantive due process bars arbitrary, wrongful government actions); *Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 249 (5th Cir.2000) (substantive due process protects against deprivation of constitutionally protected interests through government's arbitrary abuse of power). Thus, the first question under both procedural and substantive due process is whether appellee has a constitutionally protected property interest in his deputy constable position.

■■■ A constitutionally protected property interest is an "individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Wiland*, 124 S.W.3d at 396 (quoting *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex.1993) (quoting *Logan*, 455 U.S. at 430, 102 S.Ct. 1148)). The interest cannot be based on a mere unilateral expectation. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A legitimate claim of entitlement is not created by the Constitution but "by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Thus the issue is whether appellee's expectation of continued employment as a deputy constable after December 29, 2000 is grounded in state law or if it is a mere unilateral expectation.

Appellee asserts the issue of constitutional protection of his continued employment was decided by this Court in *Wiland* and that our opinion in that case controls in this case. In *Wiland*, we held the Dallas County deputy constables, according to the provisions of the Local Government Code and the County's personnel policies implemented under the provisions of the Local Government Code, had a constitutionally protected property interest in their employment, were protected by the County's civil service system, could not be terminated except for the reasons set out in its personnel policies, and were entitled to the notice and hearings provided by the civil service system under its grievance

procedures.[6] *Wiland*, 124 S.W.3d at 397–99.

The County argues that *Wiland* is distinguishable because appellee, due to his physical inability to perform the duties of a deputy constable, is not similarly situated to the deputy constables in *Wiland* who were terminated by Dupree's decision not to rehire them. Nothing in the *Wiland* opinion indicates that the deputy constables in that case were unable to perform the duties of the deputy constable position. Appellee, however, by applying for disability benefits with the social security administration, stated he was unable "to engage in any substantial gainful activity" as of August 14, 2000 and expected his disability to result in his death or continue for at least twelve months. *See* 42 U.S.C.A. § 423(d)(1)(A) (West Supp.2005) (definition of "disability"). The record contains copious evidence of reports from health care providers and opinions on appellee's applications for disability benefits, all of which conclude that appellee was physically incapable of performing the duties of a deputy constable. Some of these reports state appellee, before the County terminated him, had reached his maximum level of improvement and that his disabilities were permanent. Some of the reports conclude appellee was incapable of performing any gainful employment. At the end of his employment, December 29, 2000, appellee was unable to perform even the light-duty assignments Castillo had authorized for him. Whether appellee had a legitimate claim to continued employment is controlled by the County's leave policies, which were not a consideration in *Wiland*. Accordingly, we conclude *Wiland* does not control the issue of whether appellee had a constitutionally protected property interest.

To determine appellee's right to his continued employment on December 29, 2000 despite his inability to work, we must examine the County's leave policies, the right to return to work under those policies, and their application to appellee. The County's personnel policies allow an employee to take up to twelve weeks of leave per twelve-month period under the Family and Medical Leave Act (FMLA). DALLAS COUNTY CODE § 82–603(1). Workers' compensation leave for a "serious health condition," that is, one requiring the employee to be off work for more than three days, is designated as family and medical leave and is subject to the twelve-week limit. *Id.* §§ 82–558(2), –606(f). Before an employee who has missed work due to a workers' compensation injury may return to work, the employee must obtain certification from a physician that the employee is physically able to return to work. *Id.* §§ 82–564(e)(1), –606(h). An employee who has exhausted his FMLA leave may request additional time off beyond the twelve weeks at the discretion of the department head. *Id.* § 82–606(j). "Failure to submit the written request before the family and medical leave period ends may result in the employee's termination." *Id.* An employee who has exhausted all leave and is suffering from "an illness or disability not believed to be of a permanent or disqualifying nature" may apply for leave without pay, but the application must be approved by an order from the commissioners court to be effective, and that approval is discretionary and discouraged. *Id.* §§ 82–471, –472, –473.

Once an employee is able to return to work, the County's policies impose the following "guidelines" on placement of the employee. An employee whose physician

**6.** In July 2003, the County amended its personnel policies to remove deputy constables from the definition of employees entitled to the protections of the civil service system.

has approved the employee's return to work without any restrictions returns to his regularly assigned job duties. If the employee's physician places restrictions on the employee's physical abilities, then the department in which the employee works may (a) retain the employee in the previous position by accommodating the restrictions, (b) transfer the employee to another position within the department, (c) contact human resources to attempt to place the employee in a position in another department, or (d) "[t]erminate the employee if unable to accommodate." *Id.* § 82–564(a). Placement of an employee in another department is not guaranteed. *Id.* § 82–564(b).

Consideration of these policies leads to the conclusion that a County employee's legitimate claim to his position when the employee is not able to work does not extend beyond the exhaustion of all leave guaranteed under the FMLA and all additional leave discretionarily granted. If the employee is unable to return to work at the end of all leave, then the employee no longer has a legitimate claim to employment guaranteed by state law.

Appellee's time off work of more than three consecutive days fell under the FMLA. Thus, his absences from June 21 through June 26 used four days of his twelve weeks of FMLA leave. Appellee's FMLA leave began running again on August 11, and the twelve weeks expired on October 27. On December 29, when appellee's employment with the County ceased, appellee's guaranteed leave under the FMLA was exhausted, his doctor had declared him unfit to work at all, and he had not been granted any discretionary leave. These facts establish that appellee's continued employment on December 29, 2000 was not an "individual entitlement grounded in state law" and that any expectation

appellee had of continued employment was a mere unilateral expectation.

The County has conclusively established appellee had no constitutionally protected property interest in his deputy constable position when his employment with the County ceased. Because the existence of a constitutionally protected property interest is a necessary element to both procedural and substantive due process claims, the County has also conclusively established that appellee has failed to allege the deprivation of federally protected rights. Thus, the County retains its immunity to suit.

We hold the trial court erred in denying the County's plea to the jurisdiction on appellee's section 1983 claims. We sustain the third issue.

### Official Immunity

In the fourth issue, Dupree contends the trial court erred in denying his motion for summary judgment on the ground of official immunity. Section 51.014(a)(5) authorizes an interlocutory appeal from the denial of a motion for summary judgment "based on an assertion of immunity by an individual who is an officer or employee of . . . a political subdivision of the state." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2005). Official immunity protects public officials from lawsuits arising from performance of their (1) discretionary duties (2) in good faith (3) within the scope of their authority. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 422 (Tex.2004); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Official immunity is an affirmative defense, and the burden of proof is on the official to prove all elements of the defense. *Ballantyne,* 144 S.W.3d at 424; *Chambers,* 883 S.W.2d at 653. To prevail on a motion for summary judgment asserting an affirmative defense, the movant must conclusively prove each

element of the defense and establish his entitlement to judgment as a matter of law. *Garza v. Exel Logistics, Inc.,* 161 S.W.3d 473, 475 & n. 10 (Tex.2005); *McIntyre v. Ramirez,* 109 S.W.3d 741, 748 (Tex. 2003).

■ Dupree first argues he cannot be liable under the Anti–Retaliation Law because he was not appellee's employer. Dupree argues that only employers, not supervisors and officials, can be liable under the Anti–Retaliation Law. *See Jenkins,* 16 S.W.3d at 439. In the motion for summary judgment, this argument was not presented as an assertion of official immunity. Under section 51.014(a)(5), our jurisdiction is limited to whether the trial court correctly ruled on a motion for summary judgment based on an assertion of official immunity. We lack jurisdiction to consider any other arguments for the summary-judgment movant's lack of liability. *Boozier v. Hambrick,* 846 S.W.2d 593, 596 (Tex. App.-Houston [1st Dist.] 1993, no writ). Dupree's argument that he cannot be liable under the Anti–Retaliation Law because he was not appellee's employer is not an assertion of official immunity because it does not assert his actions were discretionary, made in good faith, and within the scope of his authority. Accordingly, this argument does not fall within the limited grant of our jurisdiction for interlocutory appeals, and we cannot consider it.

■ Dupree argues he has official immunity for any termination occurring before January 1, 2001 because he was not Constable or a public official and so could not have been acting under color of state law before January 1, 2001. We disagree. Official immunity requires that the party was a public official. *See Ballantyne,* 144 S.W.3d at 422; *Chambers,* 883 S.W.2d at 653. Dupree's argument on its face is self-defeating. Dupree admits he was not a public official before January 1, 2001. Thus, because only a public official can claim official immunity, we conclude Dupree has failed to establish his official immunity for that period.

■ Dupree next argues he has official immunity for his actions after January 1, 2001 in not swearing in appellee for another term because his decision not to re-hire appellee was discretionary and made in good faith. We agree. At that time, appellee had been terminated for his inability to work, and he was unable to perform even light-duty assignments. As appellee had exhausted all leave, he no longer had a claim to continued employment grounded in state law. Thus, Dupree's decision whether to swear in appellee as a deputy constable was discretionary. The record shows the reasons Dupree chose not to swear in appellee for another term were his lack of faith and confidence in appellee and because appellee exhausted his leave time and did not return to work. Regardless of whether Dupree's reason for not swearing in appellee was his lack of faith and confidence in appellee or appellee's failure or inability to return to work, Dupree's decision under these facts and circumstances was one made in good faith within the scope of his authority. We conclude Dupree has conclusively established his official immunity on all causes of action concerning Dupree's conduct on or after January 1, 2001 and that the trial court erred in denying Dupree's motion for summary judgment on those allegations. We sustain the fourth issue in part and overrule it in part.

## CONCLUSION

In cause number 01–08074–F, we affirm the denial of the plea to the jurisdiction.

In cause number 01–02585–F, we reverse the trial court's order denying the

County's plea to the jurisdiction, and we dismiss appellee's causes of action against the County for want of jurisdiction. We reverse the trial court's order denying Dupree's motion for summary judgment asserting official immunity as to all causes of action concerning Dupree's actions on or after January 1, 2001, and we otherwise affirm the order denying Dupree's motion for summary judgment asserting official immunity.