**AFFIRM; and Opinion Filed May 17, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00049-CR**

**JOHN GERARD QUINN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-81971-09**

# OPINION

Before Justices Moseley, O'Neill, and Lewis
Opinion by Justice Lewis

Appellant John Gerard Quinn was charged with aggravated assault of a peace officer and possession of cocaine in an amount less than one gram. The jury found him not guilty of the assault, but guilty of the possession offense. The trial court assessed Quinn's punishment at 180 days' confinement, suspended, and he was placed on community supervision for two years and ordered to pay a $500 fine. Quinn raises three appellate issues: he contends the trial court erred in making its response to a jury question and in denying Quinn's motion to suppress; he also contends the evidence is insufficient to establish he knew the substance in his safe was contraband. We affirm the trial court's judgment.

## Background

A SWAT team served a search warrant on Quinn's home after he had gone to bed. The warrant was issued after two informants told police that Quinn's son, Brian, was manufacturing

and selling drugs at the Quinn residence and that Brian kept a number of weapons in the house, including an AK-47 rifle. Quinn awoke during the entrance of the SWAT team and grabbed his handgun. One officer on the SWAT team testified he saw Quinn point the gun at him, and the officer shot Quinn in the hand. The police found a number of guns and a bag containing less than a gram of cocaine in two safes in Quinn's bedroom. Quinn was charged with aggravated assault of a peace officer and possession of cocaine; the jury found him not guilty of the assault but guilty of the possession. The trial court assessed his punishment at two years of probation and a $500 fine.

## The Motion to Suppress

Quinn filed a motion to suppress the evidence acquired pursuant to the search warrant; the trial court denied the motion. In this Court, Quinn challenges the sufficiency of the affidavit that supported the warrant and the police's no-knock entry into his home to execute the warrant. We review the trial court's ruling on a motion to suppress by viewing all of the evidence in the light most favorable to the court's ruling. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). We afford the trial court's determination of historical facts almost total deference, and we afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.* Likewise, we give almost total deference to the trial court's ruling on any mixed questions of law and fact that depend on an evaluation of credibility and demeanor. *Id.* We review legal questions—and any mixed questions of law and fact that do not involve issues of credibility or demeanor—de novo. *Id.*

### Sufficiency of the Affidavit

Quinn contends that the affidavit offered in support of the search warrant in this case contained unreliable and false information and could not justify a finding of probable cause. Before a magistrate can issue a search warrant, he must first find probable cause that a particular

item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). We review the four corners of the supporting affidavit to determine whether it provides a substantial basis for issuing the warrant. *Id.* Probable cause exists if, given the totality of the circumstances, there is a fair probability that contraband will be found at the location identified. *Id.* "This is a flexible, nondemanding standard." *Id.* We will uphold the magistrate's decision so long as he had a substantial basis for concluding that probable cause existed. *Id.*

Quinn challenges the reliability of the two informants who brought the information to the police. He stresses that neither had provided information to the police before. But both informants were identified by name in the warrant affidavit, a fact that lends credibility to their statements. *See Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (when probable cause affidavit specifies named informant as supplying information upon which probable cause is based, affidavit is sufficient if it is sufficiently detailed to suggest direct knowledge on informant's part). Both informants admitted activity related to Brian's drug dealing but—at least at the time they assisted police—neither was offered leniency in return. Both informants appeared to be motivated in part by Brian's telling them that people had died after taking his drugs. And both informants independently gave significant details about where contraband could be found: they identified Brian's house, specific rooms in the house, and hiding places in those rooms. In effect, the informants corroborated each other. Both identified the same list of drugs Brian was involved with; both told police about a storage unit where Brian kept supplies; and both described pill presses of different sizes that Brian owned and used in his drug trade. Finally, one of the informants cooperated with police in sending a text to Brian from the informant's phone, asking to buy Xanax. He received a texted reply from Brian's number,

agreeing to provide the drugs when Brian got home. We conclude the informants' information was sufficiently reliable for the magistrate to rely upon in determining probable cause.

Quinn also challenges the veracity of the affiant-officer, Detective Christopher Grollnek, particularly concerning whether benefits were offered to the informants that would make their information less reliable. Grollnek stated in his affidavit that both informants made statements against their penal interest with no promise of leniency. Quinn elicited testimony, however, that neither informant was ever convicted: one informant's case was ultimately dropped, and the second informant never had charges filed against him. Quinn charges that Grollnek's statement was false when made. But Grollnek testified at trial that, at the time his affidavit was made, his statement was true; only afterwards did circumstances change for both informants. We give almost total deference to the trial court's determination on issues involving credibility and demeanor. *See Gonzales*, 369 S.W.3d at 854. We cannot conclude the affidavit contained a deliberate falsehood that would support voiding the search warrant.

We conclude the magistrate had adequate reliable information in Grollnek's affidavit to conclude, within a fair probability, that drugs and guns would be found in Quinn's residence. Thus, the police obtained a valid search warrant based on probable cause.

*The No-Knock Entry*

Quinn also contends evidence should have been suppressed because the police entered his residence unannounced. The Fourth Amendment does not require the police to knock and announce in all cases. *Richards v. Wisconsin*, 520 U.S. 385, 395 (1997). It is not necessary when circumstances present a threat of physical violence or when there is reason to believe that evidence would likely be destroyed if advance notice were given. *Hudson v. Michigan*, 547 U.S. 586, 589 (2006). When reviewing a no-knock issue, we ask whether police had a reasonable suspicion under the particular circumstances that one of these grounds for failing to knock and

–4–

announce exists. *Id.* at 590. The United States Supreme Court acknowledges that this reasonable-suspicion showing is not high. *Id.* Nevertheless, the police are required to make that showing whenever a defendant challenges the reasonableness of a no-knock entry. *Richards*, 520 U.S. at 394.

We conclude the State has made a satisfactory showing that the circumstances presented a threat of physical violence in this case, based upon the informants' statements that Brian kept a number of guns in his home, including an AK-47. Unannounced entries have been upheld as reasonable when the police had information there were guns on the premises to be searched. *See, e.g., Stokes v. State*, 978 S.W.2d 674, 677 (Tex. App.—Eastland 1998, pet. ref'd) (testimony that police had been informed marijuana and guns were present in house to be searched made no-knock entry reasonable under circumstances); *Klepper v. State*, No. 05-02-01283-CR, 2003 WL 22663508 (Tex. App.—Dallas Nov. 12, 2003, pet. ref'd) (given confidential informant's report that house to be searched contained weapons, together with surveillance equipment observed by police, police could have reasonably suspected threat to officers' safety). Officers involved in the planning, preparation, and execution of the operation testified they believed the operation was high-risk because of the presence of guns on the premises. One officer testified the presence of an AK-47 particularly concerned the team, because the officers' body armor would not protect them from its shots. We conclude the officers' knowledge that guns, including the exceptionally dangerous AK-47, were likely to be on the premises to be searched made the no-knock entry reasonable under the existing circumstances.

However, even if we were persuaded the unannounced entry was not reasonable, we would conclude the evidence seized from Quinn's house should not have been suppressed. Texas law provides that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of

–5–

the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). But Texas courts have established that evidence is not obtained in violation of a provision of law when there is no causal connection between the illegal conduct and the acquisition of the evidence. *Gonzales v. State*, 67 S.W.3d 910, 912 (Tex. Crim. App. 2002); *see also Pham v. State*, 175 S.W.3d 767, 772–73 (Tex. Crim. App. 2005) (causal connection between violation and obtaining evidence must be shown before evidence is rendered inadmissible). The burden is on the moving party to produce evidence demonstrating that causal connection. *Pham*, 175 S.W.3d at 774.

In this case the police were permitted to search the residence pursuant to a valid warrant. Regardless of how they entered the house, they would have legally found the cocaine in Quinn's safe. Accordingly, there was no causal connection between the no-knock entry and the discovery of the cocaine; the evidence would not be suppressed.[1]

We overrule Quinn's second issue.

### Sufficiency of Evidence

In his third issue, Quinn contends there is insufficient evidence to support his conviction. Quinn's specific argument is that the evidence is insufficient to establish that he knew the substance in his safe was contraband. To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). We determine whether the evidence is sufficient to support a conviction by asking whether, after viewing the evidence in the light most favorable

---

[1] Quinn equates this requirement of causal connection with the doctrine of inevitable discovery, and he correctly points out that the federal inevitable discovery doctrine does not apply to the Texas exclusionary rule. *See State v. Daugherty*, 931 S.W.2d 268, 273 (Tex. Crim. App. 1996) ("Article 38.23 does not contemplate an inevitable discovery exception."). But the causal connection required by *Gonzales* and *Pham* is not the same as inevitable discovery. *See State v. Callaghan*, 222 S.W.3d 610, 615 and n.6 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("[C]ourts and legal commentators have agreed the majority opinion in *Hudson* is about causation and not about the inevitable discovery doctrine.").

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012).

In the absence of an admission by the accused, knowledge must be proven circumstantially. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). "One's acts are generally reliable circumstantial evidence of one's intent." *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). The record indicates Quinn locked the cocaine in a safe in his bedroom along with a loaded gun, a vial of testosterone, and his passport. Accordingly, the jury could infer Quinn believed that the substance had some value to him and that he wanted it kept safe from theft or loss or misuse. Brian testified he did not have the combination to his father's safe. Thus, the jury could also infer that Quinn intended to keep the substance private.

Brian testified his father did not use drugs, and the cocaine probably belonged to him or to friends of his who had brought drugs to the house. However, jurors are the sole judges of the credibility of the witnesses, and they may choose to believe or disbelieve any witness. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Brian also testified that his father had thrown him of the house for drug use once before. He related that his father would confront him with drugs when he discovered them so that Brian would be forced to acknowledge he was using them. Thus, he suggested, Quinn may have been holding drugs he found to confront Brian. But this contention proves too much: Quinn would only confront Brian if he knew the bag contained illegal drugs.[2]

In the end the bag containing cocaine was in Quinn's safe, and only he knew the combination. The State was not required to prove the reason he held or hid the cocaine. He clearly possessed it, and given that he must have put it in the locked location, the jury could infer he knew what was in the bag. A rational juror could certainly have concluded Quinn knew what

---

[2] Quinn asks us to create a "parental exception" to Texas law on possession. Such a creation is the job of the Legislature, not this Court.

was in the bag was contraband. Accordingly, the evidence of knowledge is sufficient, and we overrule Quinn's third issue.[3]

## Response to Jury Question

In his first issue, Quinn complained that the trial court's answer to a question from the jury was an improper comment on the weight of the evidence and the defense's theory of the case. However, Quinn has acknowledged a mistake in his understanding of the record on this issue. The jury sent this question to the judge:

> In the 8th paragraph of cause 429-81971-09 it states:
>
> > A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.
>
> The Question: Does the possessor have to know the thing is illegal.

And, without objection from either party, the judge sent this answer:

> You have all the law and the evidence in this case. Please continue your deliberations.

However, Quinn thought the judge had sent *this* answer to the above-quoted question instead:

> In response to the jury note, you have all the law and the evidence in this case. A rereading of the closing arguments is not permitted. Please continue your deliberations.

In reality, this second answer was sent in response to the intervening jury question:

> Can we get the closing arguments?

Because Quinn has acknowledged his confusion, we need not address the first issue.[4]

---

[3] At oral argument counsel for Quinn contended that, although the jury charge tracked the statute for possession of contraband, the trial court should have specifically instructed the jury that the defendant must know the substance he possesses is illegal. Quinn failed to raise or brief this issue on appeal, and it is not before us.

[4] In his reply brief, Quinn acknowledges his initial mistake, but then says the court's refusal to allow a rereading of closing arguments constituted error. Quinn may not use his reply brief to raise new issues. *See Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied). Indeed, Quinn's original brief conceded that "counsels' closing statements are not reread after deliberations begin."

**Conclusion**

We have decided each of Quinn's issues against him. Accordingly, we affirm the trial court's judgment.

<div style="margin-left:50%">/David Lewis/<br>DAVID LEWIS<br>JUSTICE</div>

Do Not Publish
TEX. R. APP. P. 47

120049F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN GERARD QUINN, Appellant

No. 05-12-00049-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-81971-09.
Opinion delivered by Justice Lewis.
Justices Moseley and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of May, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE